IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:21-CR-307 |
| vs. | |
| KYLE MOORE, | **MEMORANDUM AND ORDER ON OBJECTION TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION** |
| Defendant. | |

## I. INTRODUCTION

The Government has charged Defendant Kyle Moore with two crimes: (1) felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); and (2) possession of ammunition following a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9), 924(a)(2). Filing 1 at 1–2. On May 17, 2022, Defendant filed a Motion to Suppress evidence obtained during the traffic stop of a vehicle in which Defendant was a passenger. Filing 17. Following an evidentiary hearing, United States Magistrate Judge Susan M. Bazis issued a Findings and Recommendation, recommending to the undersigned judge that Defendant's Motion be denied. Filing 38. This matter is before the Court on Defendant's Objection to Judge Bazis's Findings and Recommendation. Filing 40. In his Objection, Defendant does not contest Judge Bazis's factual findings, but instead challenges her legal conclusion that there was reasonable suspicion to detain Defendant. Filing 41 at 3. For the reasons stated herein, the Court overrules Defendant's Objection and adopts Judge Bazis's Findings and Recommendation in its entirety.

## II. BACKGROUND

The facts as found by Judge Bazis, which are uncontested by Defendant, are as follows: On November 28, 2021, at approximately 4:30 a.m., Omaha Police Officer Daniel Cleveland

1

stopped a black Hyundai Sonata for expired registration. Officer Cleveland made the stop in a high crime area of Omaha he regularly patrolled. At the time of the stop, it was cold and dark outside.

When Officer Cleveland approached the driver's side of the vehicle, the driver, Christian Lopez, rolled down his window about a quarter of the way. During the evidentiary hearing, Officer Cleveland testified that rolling down the driver's side window this way is uncommon and usually indicative of criminal behavior. Lopez told Officer Cleveland that the vehicle belonged to his girlfriend who was incarcerated in Utah. While speaking with Lopez, Officer Cleveland noticed that Lopez appeared to be avoiding eye contact, had a pale complexion, and was acting nervously. Officer Cleveland asked Lopez for identification and observed Lopez's hands shaking as he removed a card from his wallet. Lopez then handed Officer Cleveland either a Nebraska identification card or an expired license. Officer Cleveland then asked Defendant, a passenger of the vehicle, for identification, who responded that all he had was a Covid vaccination card and gave Officer Cleveland his name, date of birth, and address. Although Officer Cleveland could not clearly see Defendant because it was dark, he did not detect any nervousness from Defendant.

Officer Cleveland then asked where Lopez and Defendant were going. Lopez answered that they were going to see a friend. Officer Cleveland asked for the friend's address, to which Lopez responded that he did not know. During the evidentiary hearing, Officer Cleveland testified that he found these travel plans suspicious because Lopez did not mention the general area to which they were going and believed Lopez was giving evasive answers. Officer Cleveland also averred that he found it odd for Lopez and Defendant to be out at that hour especially given how cold it was.

Once Officer Cleveland returned to his cruiser, he ran data checks and learned Lopez did not have a valid driver's license; that the vehicle was not stolen but that the registration had

2

expired; that both Lopez and Defendant were gang members who had extensive criminal histories that included drugs and firearm offenses; and that Lopez was a potentially violent offender and that Defendant had prior violent offenses. After learning this information, Officer Cleveland called Omaha Police Officer Jarid Freyermuth to assist for safety purposes. He also called for a K-9 unit because he believed Lopez and Defendant were involved in illegal drug activity. At the evidentiary hearing, Officer Cleveland explained that he called the K-9 unit at this time to expedite the process because there are usually no more than two K-9 units available within Douglas County.

As Officer Cleveland was finishing the data checks and the traffic citation, Officer Samantha Casey arrived to assist him. Officer Cleveland told Officer Casey that he planned to remove Defendant from the vehicle and pat him down while waiting for the K-9 unit. Officers Cleveland and Casey then approached the vehicle and Officer Cleveland directed Lopez to exit and began patting him down for weapons. Officer Cleveland testified at the evidentiary hearing that whenever he issues a citation, he asks the driver to exit the vehicle for safety reasons and because he likes to use the hood of his cruiser to write on. During his pat-down search of Lopez, Officer Casey informed him that she saw an open bottle of alcohol in the vehicle. Officer Cleveland asked Lopez if he had been drinking and Lopez ultimately stated that he had not. At this point, the K-9 unit arrived. Defendant was then removed from the vehicle and patted down. Defendant did not act nervously and nothing was located during the pat-down search. After the pat-down search, Officer Cleveland told Defendant to stand between the vehicle and the cruiser. Officer Cleveland then spoke to the K-9 unit to explain what was happening.

Following his brief discussion with the K-9 unit, Officer Cleveland found the bottle of alcohol mentioned by Officer Casey—which turned out to be a half-full bottle of malt liquor—on the rear passenger floorboard just under the seat. At the evidentiary hearing, Officer Cleveland

testified that the open container of alcohol was significant because possessing an open container of alcohol in a vehicle was a misdemeanor offense and, in his experience, there is usually more than one open container and such discoveries indicate driving under the influence. Officer Cleveland then searched the immediate areas of the vehicle, during which he located several hundred unused self-sealed two-inch-by-two-inch baggies under the driver's seat. Officer Cleveland averred during the evidentiary hearing that these types of bags are commonly used to package illegal narcotics for resale and that the number of baggies was consistent with drug distribution.

At this point, Officer Cleveland asked Lopez for consent to search the vehicle, which Lopez denied. Officer Cleveland then told Lopez and Defendant that they were being detained and that the K-9 unit would be conducting a sniff search. The K-9 unit conducted a sniff search of the vehicle and received a positive alert for narcotics. During a search of the vehicle, officers discovered a methamphetamine pipe in a backpack in the rear of the vehicle on the driver's side that belonged to Lopez. Officers also found five bags of methamphetamine in a flip-open change compartment near the steering wheel. Officers also searched a backpack found in the rear passenger seat, which contained an empty Glock magazine, ammunition, and Defendant's vaccine card. Other officers told Officer Cleveland that Defendant admitted that the backpack with ammunition belonged to him.

Officers arrested Lopez, but Officer Cleveland made the discretionary decision to allow Defendant to leave in the vehicle. At the evidentiary hearing, Officer Cleveland explained that he did not believe he could arrest defendant for being a felon in possession of ammunition because it is only a federal offense and there was not a federal agent present.

### III. STANDARD OF REVIEW

28 U.S.C. § 636(b)(1) governs the different standards of review when a party objects to a decision or a proposed findings or recommendations by a magistrate judge. *See* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's proposed findings or recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." *Id.*; *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) (When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the entire matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . .").

## IV. ANALYSIS

Defendant argued in his Motion to Suppress that law enforcement officers unlawfully seized him by prolonging the traffic stop to conduct a dog sniff search without reasonable articulable suspicion. Filing 18 at 3–5. In her Findings and Recommendation, Judge Bazis concluded that officers did not unlawfully prolong the traffic stop because Officer Cleveland had not finished issuing the citation for the traffic violation before Officer Casey observed the open container of alcohol. Filing 38 at 8–9. The open container provided probable cause to search the vehicle, during which Officer Cleveland located plastic baggies consistent with drug distribution. Filing 38 at 9. At that point, Judge Bazis concluded, there was reasonable suspicion to detain Defendant based upon the totality of the circumstances of the traffic stop. Filing 38 at 9–10.

In his Objection to Judge Bazis's Findings and Recommendation, Defendant concedes that Officer Cleveland could lawfully detain Lopez, but argues that Officer Cleveland did not have reasonable suspicion to detain Defendant for the purposes of deploying a drug dog. Filing 41 at 4. Defendant points out that he did not act nervously or suspiciously during the traffic stop and contends that the articulable facts supporting extension of the traffic stop came from Lopez's behavior. Filing 41 at 4. Once Officer Cleveland ripped the ticket off the cruiser's printer, Defendant asserts, the reasons for detaining Defendant ended. Filing 41 at 5.

"A traffic stop is a seizure within meaning of the Fourth Amendment, and authority for the stop 'ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.'" *United States v. Salkil*, 10 F.4th 897, 898 (8th Cir. 2021) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). "A delay that 'prolongs—i.e., adds time to—the stop' to conduct investigatory actions unrelated to the purposes of the stop is impermissible unless it is supported by reasonable suspicion." *United States v. Sanchez*, 955 F.3d 669, 674 (8th Cir. 2020)

(internal citation omitted) (quoting *Rodriguez*, 575 U.S. at 357). Passengers may suppress evidence discovered when searching a vehicle "when an unreasonably extended traffic stop causes the search." *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019).

"If, during the course of completing these routine tasks, 'the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion.'" *United States v. Chartier*, 772 F.3d 539, 543–44 (8th Cir. 2014) (quoting *United States v. Peralez*, 526 F.3d 1115, 1120 (8th Cir. 2008)). "A reasonable suspicion is 'some minimal, objective justification' for suspicion beyond an 'inchoate hunch.'" *Davis*, 943 F.3d at 1132 (quoting *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004)). It requires the officer conducting the stop to "identify 'specific and articulable facts which, taken together with rational inferences from those facts,' amount to reasonable suspicion that further investigation is warranted." *United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th Cir. 2017) (quoting *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016)). The court evaluates whether there was reasonable suspicion by looking at the "totality of the circumstances" rather than "elements of suspicion in isolation." *Sanchez*, 955 F.3d at 674–75.

The Court agrees with Judge Bazis's conclusion that Officer Cleveland had the requisite reasonable suspicion to prolong the traffic stop—and Defendant's detention—to conduct a dog-sniff search. Defendant incorrectly contends that the only facts supporting Defendant's continued detention for the dog-sniff search was the traffic stop occurring at 4:30 am in a high crime area, Defendant's gang affiliation and extensive criminal history with guns and drugs, and Lopez's conduct. Instead, Officer Cleveland lengthened the traffic stop to allow a sniff-search after he located several hundred self-sealed two-inch-by-two-inch baggies under the driver's seat that Officer Cleveland testified were commonly used to distribute narcotics. *See Chartier*, 772 F.3d at

543–44 (stating that the process of determining the existence of reasonable suspicion "allows officers to draw on their own experience and specialized training to make inferences"); *cf. United States v. West*, 280 F. App'x 563, 566 (8th Cir. 2008) ("We have held that simply observing the presence of containers that are known to typically contain illegal narcotics gives rise to probable cause to perform a warrantless search of a vehicle."). Officer Cleveland's discovery came after a host of suspicious behavior during the traffic stop. First, Lopez's statement that the vehicle belonged to his girlfriend—who he claimed was incarcerated in Utah—his vague explanation that he and Defendant were travelling to see a friend at an unknown address, and Lopez's nervous behavior, are factors supporting reasonable suspicion that can justify a traffic stop's extension. *See Davis*, 943 F.3d at 1133 (outlining that a combination of nervous behavior and suspicious travel plans, as well as a third-party vehicle owner's absence, contributes to a finding of reasonable suspicion). After returning to his cruiser, Officer Cleveland discovered that both Lopez and Defendant were gang members with extensive criminal histories, which included drug, firearm, and violent offenses. *See United States v. Gill*, 513 F.3d 836, 844 (8th Cir. 2008) (noting that the officer learning that both the vehicle's driver and passenger had prior arrests for drugs and weapons supported reasonable suspicion). Before issuing the citation,[1] Officer Casey notified Officer Cleveland that she saw an open bottle of alcohol in the vehicle. *See Saunders v. Thies*, 38 F.4th 701, 712–13 (8th Cir. 2022) (holding that an open liquor bottle in a vehicle, as well as a child without a booster seat in the backseat, "provided the officers with the reasonable suspicion necessary to investigate these infractions"). Thus, before Officer Cleveland had finished with the

---

[1] Officer Cleveland ordered Lopez to exit the vehicle before issuing the citation, which was lawful. *See United States v. Warren*, 984 F.3d 1301, 1304 (8th Cir. 2021) (stating that officers can take actions during a traffic stop that are reasonably necessary to protect their safety, which includes ordering drivers and passengers out a car pending the investigation of a stop). It was dark outside, the stop occurred in a high-crime area, and both Lopez and Defendant were gang affiliated with criminal histories that included drug, firearm, and violent offenses.

routine tasks of the traffic stop, he had been confronted with several articulable facts that support reasonable suspicion.

"An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." *Murillo-Salgado*, 854 F.3d at 415 (quoting *United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002)). In this case, as Officer Cleveland performed the routine tasks related to stopping the vehicle, he encountered specific and articulable facts that caused his suspicion of criminal activity to reasonably grow. And while Defendant emphasizes that he did not act nervously during the traffic stop, all the factors considered together justify Officer Cleveland's decision to extend the traffic stop to conduct a sniff-search despite Defendant's lack of nervous behavior. *See generally Sanchez*, 955 F.3d at 675 (noting that "a determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct" (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Therefore, the Court overrules Defendant's objection to Judge Bazis's Findings and Recommendation, adopts Judge Bazis's Findings and Recommendation in its entirety, and denies Defendant's Motion to Suppress.

## V. CONCLUSION

Officer Cleveland had reasonable suspicion to detain Defendant to conduct a sniff-search. Accordingly,

IT IS ORDERED:

1. Defendant's Objection to Judge Bazis's Findings and Recommendation, Filing 40, is overruled;

2. Judge Bazis's Findings and Recommendation, Filing 38, is adopted in its entirety; and

3. Defendant's Motion to Suppress, Filing 17, is denied.

Dated this 18th day of November, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge